Submitted December 18, 2014, convictions for identity theft reversed, remanded for resentencing, otherwise affirmed March 30, 2016

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

LATRELL EARVIN POSTON,
*Defendant-Appellant.*

Multnomah County Circuit Court
120431530; A152933

370 P3d 904

Peter Gartlan, Chief Defender, and Elizabeth Daily, Deputy Public Defender, Office of Public Defense Services, filed the briefs for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Timothy A. Sylwester, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Egan, Judge, and Shorr, Judge.

ARMSTRONG, P. J.

## ARMSTRONG, P. J.

Defendant appeals a judgment of conviction for six counts of promoting prostitution, ORS 167.012, and 26 counts of identity theft, ORS 165.800. He contends that the indictment was legally defective because it did not expressly allege a basis for joining multiple counts in a single indictment or otherwise allege facts showing that the charges were properly joined and, consequently, that the trial court erred in denying his demurrer to the indictment. Defendant also assigns error to the court's acceptance of nonunanimous guilty verdicts. We reject the latter assignment without discussion and conclude that, while the trial court erred in denying defendant's demurrer, the error requires reversal only of the identity-theft counts and not the promoting-prostitution counts. Consequently, we reverse defendant's convictions for identity theft and otherwise affirm.

Defendant was arrested for a probation violation and incarcerated at the Inverness Jail. Sergeant Luna of the Multnomah County Sheriff's Office monitored defendant's activities throughout defendant's incarceration. Luna had access to all of defendant's telephone calls at the jail and to a database that tracks the date, time, location, caller, and recipient of every telephone call placed by an inmate. The information in the database is obtained through a monitoring system that requires inmates to enter personal identification numbers before placing telephone calls. Luna also had access to defendant's mail and his inmate account. Any person can deposit money into an inmate account, which an inmate can use to buy goods at the jail commissary.

Shortly after beginning surveillance, Luna concluded that defendant was promoting prostitution from the jail. Defendant had written several letters to victims of his criminal conduct that used prostitution-related terms that Luna did not typically see in jail correspondence. Additionally, defendant had placed a large number of telephone calls to the victims. During those calls, defendant had instructed the victims to post advertisements on escort websites, had discussed with them the cities that they should visit to earn money, and had given them advice on avoiding

people involved in law enforcement. Defendant communicated in more than half of his calls with the victims that the victims needed to deposit money in his inmate account. Defendant eventually began using the personal identification numbers of other inmates to place calls to the victims.

The state subsequently charged defendant by indictment with 16 counts of promoting prostitution, ORS 167.012,[1] and 26 counts of identity theft, ORS 165.800.[2] The indictment alleged that the 16 counts of promoting prostitution had occurred on 12 separate days over an eight-month period. It alleged, in turn, that the 26 counts of identity theft had occurred on 13 separate days over a four-month period. The indictment did not identify the basis on which the charges had been joined in a single indictment.

Defendant demurred to the indictment on the ground that the indictment failed to comply with ORS 132.560, which specifies the circumstances in which an indictment may charge more than one offense. The state responded that ORS 132.560(1)(b)(C) authorized it to charge multiple offenses against defendant in a single charging instrument if the offenses were "parts of a common scheme or plan." In the state's view, the offenses were properly joined under that provision because the state intended to present evidence at trial that would show that all of the offenses were part of a plan to have the victims work as prostitutes and to transfer the proceeds of that activity into defendant's inmate account.

---

[1] ORS 167.012(1) provides, as relevant:

"A person commits the crime of promoting prostitution if, with intent to promote prostitution, the person knowingly:

"* * * * *

"(c) Receives or agrees to receive money or other property, other than as a prostitute being compensated for personally rendered prostitution services, pursuant to an agreement or understanding that the money or other property is derived from a prostitution activity; or

"(d) Engages in any conduct that institutes, aids or facilitates an act or enterprise of prostitution."

[2] ORS 165.800(1) provides:

"A person commits the crime of identity theft if the person, with the intent to deceive or to defraud, obtains, possesses, transfers, creates, utters or converts to the person's own use the personal identification of another person."

Defendant responded that, in determining whether to grant a demurrer, the court could consider only the facts alleged in the indictment. Because the indictment did not allege any facts that would support a finding that the charged crimes were part of a common scheme or plan, the indictment failed to allege facts that would establish that the charges were properly joined, and, consequently, the court should grant the demurrer. The court disagreed with defendant and denied the demurrer.

At trial, the state introduced 13 receipts into evidence, each of which showed that a victim had deposited money into defendant's inmate account. The state also introduced into evidence audio recordings of 26 telephone calls placed by defendant to a victim using the personal identification numbers of other inmates. The state argued to the jury in closing that it should convict defendant of the counts of promoting prostitution based, among other things, on the deposits of money into defendant's inmate account, and should convict him of the counts of identity theft based on defendant's use of the personal identification numbers of other inmates to place the 26 telephone calls. The jury found defendant guilty of six of the 16 counts of promoting prostitution and all of the counts of identity theft.

We begin with a brief discussion of the relevant statutes. ORS 135.630 provides that a defendant "may demur to the accusatory instrument when it appears upon the face thereof *** that it does not substantially conform to the requirements of *** ORS 132.560." ORS 132.560 provides, in turn:

"(1) A charging instrument must charge but one offense, and in one form only, except that:

"* * * * *

"(b) Two or more offenses may be charged in the same charging instrument in a separate count for each offense if the offenses charged are alleged to have been committed by the same person or persons and are:

"(A) Of the same or similar character;

"(B) Based on the same act or transaction; or

"(C)   Based on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

"(2)   If two or more charging instruments are found in circumstances described in subsection (1)(b) of this section, the court may order them to be consolidated.

"(3)   If it appears, upon motion, that the state or defendant is substantially prejudiced by a joinder of offenses under * * * this section, the court may order an election or separate trials of counts or provide whatever other relief justice requires."

Defendant contends that ORS 132.560 required the state to allege in the indictment the basis for joinder—either in the language of the joinder statute or by alleging facts sufficient to sustain joinder under the statute. The state responds that the trial court correctly denied defendant's demurrer because the state was not required to allege a basis for joinder in the indictment. It relies for its argument on the text of ORS 132.560, which provides that two or more offenses may be joined in a single charging instrument if the offenses *are alleged* to have been committed by the same person and, as in this case, the offenses *are * * * based* on two or more acts * * * constituting parts of a common scheme." (Emphases added.) In the state's view, that phrasing indicates that the legislature intended to require a charging instrument *to allege* that the charged crimes were committed by the same person or persons but *not* to require the charging instrument to allege any of the other joinder requirements identified in ORS 132.560.

Thus, as framed by the parties, our inquiry reduces to whether ORS 132.560 requires a charging instrument that charges multiple crimes to allege the basis for joinder or facts that would permit the court to determine the basis for joinder. We conclude that the statute imposes that requirement.

At its codification in 1953, ORS 132.560 provided:

"The indictment must charge but one crime, and in one form only, except that:

"(1)   Where the crime may be committed by the use of different means, the indictment may allege the means in the alternative.

"(2)   When there are several charges against any person or persons for the same act or transaction, instead of having several indictments, the whole may be joined in one indictment in several counts; and if two or more indictments are found in such cases, the court may order them to be consolidated."

That version of the statute did not explicitly require the state to allege the basis for joinder in the indictment. However, the Oregon Supreme Court confirmed in *State v. Huennekens*, 245 Or 150, 420 P2d 384 (1966), that the statute imposed that requirement.

The defendant in *Huennekens* was charged by indictment with one count of rape and one count of sodomy. The indictment alleged that the sodomy count was "part of the same act and transaction alleged and hereineabove set forth in Count I [charging the defendant with rape]." *Id.* at 151. The defendant demurred to the indictment, and the trial court sustained the demurrer on the ground that the charges had been improperly joined.

The Supreme Court reversed. In doing that, the court specifically relied on the principle that, in most cases, a charging instrument is legally sufficient if it alleges a crime in the language of the statute that establishes the crime:

"The indictment, in the instant case, charges in the language of the [joinder] statute, that the sodomy occurred as part of the same act and transaction as the rape. We have repeatedly held that an indictment in the language of a statute is good against a demurrer. *State v. Laundy*, 1922, 103 Or 443, 204 P 958, 206 P 290. Since it does not appear on the face of the indictment that the two crimes charged could not be a part of the same transaction, the demurrer must be overruled."

245 Or at 154. In other words, the indictment survived the demurrer because the indictment alleged the basis for joinder in the language of the joinder statute—that the charges were part of the same act and transaction—and there was

nothing in the indictment contradicting that the charges *could be* part of the same act and transaction. Had the indictment lacked the allegation that the charges were part of the same act or transaction—*viz.*, an allegation establishing the basis for joinder—then the trial court would not have erred in granting the demurrer. *Id.*

ORS 135.630 supports that conclusion. As noted, it provides that a defendant may demur to a charging instrument "when it appears on the face thereof *** that it does not substantially conform to the requirements of *** ORS 132.560." Implicit in that formulation is that, to overcome a demurrer challenging compliance with ORS 132.560, a charging instrument must show *on its face* that the requirements of ORS 132.560 *have been met.* That means that the charging instrument must show compliance with the conditions that ORS 132.560 identifies must be met for charges to be properly joined in a charging instrument—*viz.*, that the charges were committed by the same person or persons and are of the same or similar character, are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

The legislature amended ORS 132.560 in 1989 to allow more liberal joinder of charges in criminal cases. The bill that enacted the amendment is House Bill (HB) 2251 (1989). *See* Or Laws 1989, ch 842, § 1. The bill's legislative history shows that it was adopted with the understanding that it was revising ORS 132.560 to mimic Federal Rule of Criminal Procedure 8(a).[3] *See* Tape Recording, House Judiciary Committee, HB 2251, Jan 20, 1989, Tape 3, Side A (statement of Rep Kevin Mannix) ("We are really talking about a bill which is going to put Oregon on parallel with

---

[3] Federal Rule of Criminal Procedure 8(a) (1989) provided:

"Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

The text of that rule is similar to the text of ORS 132.560(1)(b). Both provisions limit when the government may charge two or more offenses in the same charging instrument, and both list the same three bases for joinder.

the Federal Rules of Criminal Procedure. * * * I would also specifically like to state for the record that we are relying on interpretations to date of Federal Rule of Criminal Procedure 8(a).”); Tape Recording, House Judiciary Subcommittee on Crimes and Corrections, HB 2251, Jan 13, 1989, Tape 2, Side A (statement of Rep Tom Mason) (“This is the joinder bill, and, as we talked about earlier this would essentially adopt the federal rule on joinder—Federal Rule [of Criminal Procedure] 8.”); House Judiciary Committee Staff Measure Summary, HB 2251, Jan 14, 1989 (“HB 2251 would bring Oregon law into conformance with Rule 8 of the Federal Rules of Criminal Procedure.”).

When the 1989 legislature enacted HB 2251, Federal Rule of Criminal Procedure 8(a) was understood to require the government to allege the basis for joinder in the indictment. *See, e.g.*, *United States v. Lane*, 474 US 438, 447, 106 S Ct 725, 88 L Ed 2d 814 (1986) (“[O]nce the Rule 8 [joinder] requirements [are] met by the allegations in the indictment, severance thereafter is controlled by Federal Rule of Criminal Procedure 14, which requires a showing of prejudice.”); *United States v. Harrelson*, 754 F2d 1153, 1176 (5th Cir), *cert den*, 474 US 1034 (1985) (“The propriety of joinder under Rule 8 is determined by the initial allegations of the indictment, which are accepted as true absent arguments of prosecutorial misconduct.”); *United States v. Bledsoe*, 674 F2d 647, 655 (8th Cir), *cert den*, 459 US 1040 (1982) (“Additionally, it is a well settled rule in this circuit that the propriety of joinder must appear on the face of the indictment.”). Because ORS 132.560 was amended to mimic a federal rule that required the government to allege the basis for joinder in the indictment—and the legislators who approved the amendment intended the Oregon statute to be construed consistently with the federal rule, which had been construed by federal courts to impose that requirement—the 1989 amendment of ORS 132.560 preserved the preexisting requirement that the basis for joinder must be alleged in the charging instrument.

In summary, we conclude that, both before and after the 1989 amendment of ORS 132.560, the state has been required to allege in the charging instrument the basis for the joinder of the crimes that are charged in it, whether

by alleging the basis for joinder in the language of the joinder statute or by alleging facts sufficient to establish compliance with the joinder statute. The state did not do that in this case. Hence, the trial court erred in denying defendant's demurrer that challenged the indictment for failure to allege the basis on which the charges had been joined in it.

We turn to whether the error affected the verdict. Under Article VII (Amended), section 3, of the Oregon Constitution, we must affirm a conviction "if there is little likelihood that [an] error affected the verdict." *State v. Gibson*, 338 Or 560, 576, 113 P3d 423, *cert den*, 546 US 1044 (2005). We have concluded in other cases that an error in denying a demurrer does not necessarily affect the verdict. For example, in *State v. Eberhardt*, 225 Or App 275, 201 P3d 915 (2009), *rev den*, 347 Or 608 (2010), the state charged the defendant by indictment with four counts of felon in possession of a firearm. The defendant demurred to the indictment on the ground that the state had failed to allege in those counts that he knew that he was a felon. The trial court denied the demurrer, and the defendant appealed. We did not resolve on appeal whether the court had erred in denying the demurrer because we determined that, even if the court had erred, the error had not affected the verdict because the defendant had notice of all of the elements of the charged crimes and "the [trial] court [had] instructed the jury that the state had to prove defendant's knowledge of his prior felony conviction beyond a reasonable doubt." *Id.* at 280. In sum, *Eberhardt* demonstrates that, when a trial court errs in denying a demurrer, it does not necessarily follow that the error affected the verdict.

Here, whether improper joinder of charges affected the verdict depends on whether joinder led to the admission of evidence that would not have been admissible but for the joinder of the promoting-prostitution charges with the identity-theft charges, and, if so, whether that evidence affected the verdict on those charges.[4]

---

[4] ORS 132.560(1)(b)(A) permits the state to join charges that are of the same or similar character. Hence, the state permissibly could charge all of the promoting-prostitution counts in a single indictment and, in turn, all of the identity-theft counts in a single indictment. What it could not do is join the

All of the evidence that was presented at defendant's trial would have been admissible at a trial in which defendant was charged only with promoting prostitution. That is because all of the evidence that formed the basis of the identity-theft charges would have been admissible to prove defendant's culpable mental state in the promoting-prostitution trial—*viz.*, to show that, when asking the victims to place money in his inmate account, he knew that he was asking them to send him money that they had obtained through prostitution activity. Consequently, the error in denying the demurrer was harmless with regard to the promoting-prostitution counts because the error had no effect on the admissibility of the evidence that the jury could consider on those counts and, hence, the verdict on them.

However, the same reasoning does not apply to the identity-theft counts. We cannot conclude that the evidence bearing on the promoting-prostitution counts would have been admissible at a trial in which defendant was charged only with identity theft. Hence, we cannot conclude that the error in denying the demurrer did not affect the verdict on the identity-theft counts.

Convictions for identity theft reversed; remanded for resentencing; otherwise affirmed.

---

promoting-prostitution counts with the identity-theft counts without alleging in the indictment the basis for the joinder of those two groups of counts in a single indictment.